THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARIA MCGOWAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7284 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| MOTEL SLEEPERS, INC., | ) | |
| DAVID JACKSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Maria McGowan brings this action against her former employer Defendant

Motel Sleepers, Inc. and her former supervisor Defendant David Jackson. Currently before the

Court is Defendants' Motion to Dismiss Certain Claims of McGowan's Second Amended

Complaint. For the reasons stated below, Defendants' Motion (Dkt. 38) is granted in part and

denied in part.

## BACKGROUND[1]

Defendant Motel Sleepers operates a hotel and restaurant in Chicago, Illinois that

primarily serves railroad employees. (Dkt. 35) at ¶ 6. McGowan began working at Motel

Sleepers in August 2014 performing housekeeping and front desk duties. At the time she was

hired, Defendant David Jackson, who was a maintenance employee at the hotel, was authorized

to act in the absence of the manager; he was later promoted to manager. *Id.* at ¶¶ 5, 9. In this

role, Jackson subjected McGowan and the hotel's other female employees (one of whom was

McGowan's sister) to verbal harassment and physically aggressive behavior. *Id.* at ¶ 10. For

---

[1] For purposes of Defendants' Motion, the Court accepts as true all well-pled allegations in the Second
Amended Complaint and draws all reasonable inferences in favor of McGowan. *See Williamson v.
Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

example, Jackson repeatedly asked McGowan and her sister out on dates and made comments about female employees' bodies in front of McGowan. *Id.* at ¶¶ 11–12. Further, Jackson exposed himself to McGowan while she was using the bathroom in a hotel guest room. *Id.* at ¶ 13. McGowan consistently refused Jackson's advances, but his behavior continued "unabated through November 2016." *Id.* at ¶ 16.

In addition to his own actions, Jackson encouraged his friends, who were not employees of Motel Sleepers, to come to the hotel and restaurant and participate in the harassment. *Id.* at ¶ 14. For example, one of Jackson's friends came to the restaurant and asked McGowan out on a date and explained in sexually explicit terms the things he would do to McGowan on the date. *Id.* Jackson gave another man McGowan's work schedule, and the man asked McGowan out on dates twice in person and multiple times in phone calls placed to the hotel. *Id.* at ¶ 15.

Motel Sleepers received numerous complaints about Jackson's behavior during this time but did not investigate or take corrective action. In fact, Jackson himself told another Motel Sleepers employee that corporate employees would inform him when a complaint was lodged against him. *Id.* at ¶¶ 17–18. For example, sometime in August 2016, Jackson was told by vice president of operations John Seiter that a female employee had filed a complaint alleging that Jackson harassed her. Seiter told Jackson that he did not believe the complaint but that he would undertake a "sham investigation" anyway. *Id.* at ¶ 19.

Because she had rejected Jackson's numerous advances, he began to retaliate against her by subjecting her to continued harassment, by disciplining her, and by denying her opportunities for promotion. *Id.* at ¶ 21. In November 2016, Jackson suspended McGowan from work for two days. After this happened, McGowan emailed a complaint about Jackson's behavior as well as her suspension to Motel Sleeper's corporate office. She also mentioned that Jackson's behavior

was causing her severe emotional distress. *Id*. at ¶ 20. When McGowan returned to work, Jackson refused to allow her to train to work in the restaurant and repeatedly referred to her as a "bitch." *Id*. at ¶¶ 23–24.

On March 14, 2017, McGowan reported to work even though she was suffering from a severe toothache and even though there was heavy snowfall in the area. *Id*. at ¶ 25. When Jackson learned that McGowan was the only housekeeper who had reported to work he said, "That bitch would be here." *Id*. at ¶ 26. Later that day, another employee asked Jackson if she could leave momentarily to get medication for McGowan's toothache, Jackson replied, "Why should I give a fuck about that bitch that doesn't give a fuck about me?" *Id*. at ¶ 28–29.

McGowan, still with a toothache, again reported for work on March 15, 2017. *Id*. at ¶ 31. During her lunch break, McGowan went with her sister to a meeting with Jackson and another employee regarding allegations that McGowan's sister had mishandled company finances. *Id*. at ¶¶ 30–31. At that meeting, McGowan confronted Jackson, asking him why he was calling her a bitch to other employees and badmouthing her character. Jackson had no response, and McGowan left the meeting. *Id*. at ¶ 32. As she left, McGowan noticed that another employee— Fern Tate, who was friendly with Jackson—was recording McGowan on her phone. McGowan asked Tate if she was recording and took a step towards Tate to investigate. Tate jumped up and said, "I'm the wrong person to run up on." *Id*. at ¶ 33. The two exchanged words: McGowan told Tate that she had not given her permission to be recorded; Tate replied that she would "send someone to wait for [McGowan] in the parking lot." *Id*. at ¶ 34. Based on this exchange, McGowan filed a report against Tate with the Chicago Police Department. *Id*. at ¶ 35.

On March 16, 2017, McGowan lodged complaints about both Jackson and Tate to Motel Sleeper's corporate payroll manager Penny Spangler. She also complained about Seiter's non-

response to her previous complaints about Jackson (although it is not clear from the Second Amended Complaint if McGowan's November 2016 email complaint had been sent to Seiter or if she is referring to some other complaint) and said that she did not feel like she could trust Seiter. *Id.* at ¶¶ 36–37. Spangler promised a return call but, instead of Spangler calling McGowan back, Seiter called. During the call, Seiter yelled at McGowan for calling Spangler and told her that he would be made aware of any complaints she made to the human resources department. *Id.* at ¶ 39. McGowan reiterated her complaints to Seiter, including a complaint that Jackson's brother had called her a bitch, and Seiter agreed to come to Chicago. *Id.* at ¶ 40.

McGowan met with Seiter on March 20, 2017. *Id.* at ¶ 41. At this time, she complained about Jackson's disrespectful behavior and also that he had denied her restaurant training. *Id.* at ¶¶ 23, 41. McGowan further complained that Tate had recorded her and had threatened her. McGowan told Seiter that she had filed a police report against Tate. After receiving her complaints, Seiter told McGowan that he would speak to both Tate and Jackson. *Id.* at ¶ 41.

Yet, at work on March 29, 2017, Tate stood behind McGowan and reached over her so that she was "physically on McGowan's back." *Id.* at ¶ 42. McGowan broke free and immediately went to report the incident to Jackson. When Jackson was not available, McGowan told another employee what happened and then called the police and asked for Tate to be arrested. *Id.* at ¶ 43. Two officers arrived at the scene and, instead of viewing the surveillance footage of the incident, Jackson met with one of the officers in his office without McGowan present, taking the time to show the officer Tate's cellphone recording from March 15. After the meeting, the police officer told McGowan that she would have to go to the station to sign an arrest warrant. *Id.* at ¶ 46. Unsatisfied with this response, McGowan again phoned the police department and asked to speak to a supervisor. A sergeant then came to Motel Sleepers and

viewed the available surveillance footage. After watching the footage, the sergeant told McGowan that she believed that Jackson had acted in a way to prevent Tate from being arrested. *Id.* at ¶ 47.

While McGowan was speaking with the sergeant, Jackson approached and relayed that Seiter had directed her to "take the rest of the week off." *Id.* at ¶ 48. McGowan's employment was terminated by Jackson five days later on April 3. The official reason Jackson gave for the termination was the March 29 altercation between McGowan and Tate. Jackson further stated that this was not McGowan's first encounter with another employee. Finally, the statement implied that Tate had been fired as well. *Id.* at ¶ 49. At the time she was fired, McGowan had eight accrued vacation days for which she was not paid. *Id.* at ¶¶ 50–51.

On May 9, 2017, McGowan filed a Charge of Discrimination with the Illinois Department of Human Rights and Equal Employment Opportunity Commission, alleging that she was harassed and terminated on account of her sex. *Id.* at 18. On August 16, 2017, the EEOC issued McGowan a Dismissal and Notice of Right to Sue. *Id.* at 19. On October 10, 2017, McGowan filed a *pro se* Complaint in this Court. McGowan later retained counsel. McGowan's Second Amended Complaint contains 11 claims: hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by Motel Sleepers (Count 1); sex discrimination in violation of Title VII by Motel Sleepers (Count 2); violation of Title VII for unlawful retaliation by Motel Sleepers (Counts 3, 4, 5, and 6); violation of the Illinois Whistleblower Act by both Motel Sleepers and Jackson (Counts 7 and 9); common law retaliatory discharge against Motel Sleepers (Count 8); intentional infliction of emotional distress by Motel Sleepers (Count 10); and violation of the Illinois Wage Payment Collection Act

by Motel Sleepers for failure to pay vacation time (Count 11). Defendants have moved to dismiss Counts 2, 4, 5, 7, 8, 9, and 10. (Dkts. 38, 39).

## LEGAL STANDARD

Defendants' seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6), which challenges its legal sufficiency. For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendants are liable for the harm alleged. *Id.* In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). For purposes of this motion, the Court accepts all well-pled allegations in the complaint as true and draws all reasonable inferences in McGowan's favor. *See Williamson*, 714 F.3d at 435.

## ANALYSIS

### A. Sex Discrimination in Violation of Title VII (Count 2)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Here, McGowan claims that Motel Sleepers terminated her employment on April 3, 2017 because she is female and that the stated reason given for her termination, that she had an altercation in which police were called, is

"outright pretext for illegal discrimination." (Dkt. 35) at ¶¶ 61–62. In moving to dismiss Count 2, Defendants argue, citing to the *McDonnell-Douglas* burden shifting method, that McGowan has failed to allege all necessary elements of her sex-discrimination claim. (Dkt. 39) at 2–4. But under prevailing federal notice-pleading standards, a plaintiff alleging employment discrimination need only allege the type of discrimination that she thinks occurred, by whom, and when. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'") (quoting *Tamayo*, 526 F.3d at 1084). Put differently, the Title VII pleading standard is, in fact, an "undemanding" one. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015).

Further, despite Defendants' arguments about McGowan's *prima facie* case, McGowan is not required to "plead a *prima facie* case because it an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 210 (2002); *see also Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) (the "pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet" at the summary judgment stage); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (at the pleadings stage, a plaintiff need only allege facts "to support a cause of action's basic elements"; this is not the same as making out a *prima facie* case). Accordingly, McGowan has satisfied the minimum pleading standard to state a claim for discriminatory termination. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) ("a complaint alleging [race or gender] discrimination need only aver that the employer

instituted a (specified) adverse employment action against the plaintiff on the basis of [her race or gender]").  Defendants' motion to dismiss Count 2 is denied.

## B.    Retaliation

McGowan's Second Amended Complaint contains four claims for unlawful retaliation in violation of Title VII.  *See* 42 U.S.C. § 2000e-(3)(a).  Specifically, McGowan alleges that Motel Sleepers retaliated against her when it suspended her (Count 3), permitted Jackson to continue harassing her after she complained about him (Count 4), denied her opportunities to train and advance within the organization (Count 5), and terminated her for lodging complaints about Jackson's behavior (Count 6).  Defendants take issue with only two of these claims.

### 1.    Retaliation in Violation of Title VII for Allowing Jackson's Continued Harassment (Count 4)

To state a claim for retaliation, McGowan must allege she engaged in protected activity, she suffered an adverse employment action, and there exists a causal connection between the protected activity and the adverse employment action.  *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018).  In Count 4, McGowan generally alleges that she opposed Jackson's sexually harassing remarks and behavior and that as a result, Motel Sleepers suspended her and allowed Jackson to continue to harass her.  (Dkt. 35) at ¶¶ 74–75.  Defendants argue that Count 4 fails to allege an adverse employment action, because the continued harassment described in this claim is an extension of McGowan's hostile-work-environment claim, not an independent retaliation claim.  (Dkt. 39) at 5–6.

Count 4 suffers from numerous shortfalls.  First, although it alleges that McGowan "opposed the sexually harassing remarks and behavior" of Jackson and otherwise opposed "his illegal harassment" (*see* (Dkt. 35) at ¶¶ 74–75), it does not specify when McGowan voiced her opposition and to whom for purposes of this claim.  Looking at the Second Amended Complaint

as a whole, it describes complaints McGowan made in November 2016 (around the time of her suspension) and in March 2017. And while the Second Amended Complaint is replete with allegations about Jackson's harassing behavior, following McGowan's November 2016 and March 2017 complaints, the only harassing action McGowan describes is Jackson's repeated name-calling, that is calling her a "bitch"—both to her directly and when speaking about her to others. (Dkt. 35) at ¶ 24.

An adverse employment action is a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (alteration in original) (citation omitted); *see Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (a materially adverse change "is one which visits upon a plaintiff a significant change in employment status") (citing *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)). In the retaliation context, to rise to the level of an adverse action, a change "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (quoting *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2006)). In Count 4, McGowan has not specifically alleged that Jackson's unabated harassment—in calling her a bitch or otherwise— was a materially adverse change in her employment conditions that dissuaded her from engaging in further protected activity. In fact, after her complaints about Jackson in November 2016, she was not dissuaded from lodging numerous other complaints about him in March 2017. With regard to her March 2017 complaints, she does not appear to allege that Jackson engaged in further harassing behavior afterwards. In all, McGowan has not sufficiently alleged that any

continued harassment she experienced following her complaints to management constituted an adverse employment action.

Finally, McGowan does little if anything to link the complaints she made to the continued harassment in a way in which the Court could infer that post-November 2016 harassing actions were taken on account of her complaints and opposition. "[T]he protected activity of an employee making a retaliation claim must have been 'a but-for cause of the alleged adverse action by the employer.'" *Carlson*, 758 F.3d at 828 n.1 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). The but-for requirement "does not mean that the protected activity must have been the only cause of the adverse action." *Id.* "Rather, it means that the adverse action would not have happened without the activity." *Id.* Here, McGowan does not allege that the continued harassment would not have happened in the absence of her complaints to management nor is that something the Court can reasonably infer from the Second Amended Complaint at this time. For all of these reasons, Count 4's claim for retaliatory harassment fails.

In an effort to salvage Count 4, McGowan focuses on its allegation that she was also suspended in retaliation of her opposition to Jackson's remarks. (Dkt. 42) at 6. But to the extent that a suspension is mentioned in Count 4's retaliation charge, it is merely duplicative of Count 3's retaliation charge, which is solely premised on her suspension and which Defendants have not moved to dismiss. *See* (Dkt 35) at ¶ 67 (Count 3—"Motel Sleepers, by its agent manager Jackson, suspended McGowan because she opposed the sexually harassing remarks and behavior that he directed towards her."), ¶ 74 (Count 4—"Motel Sleepers, by its agent Jackson, suspended McGowan because she opposed the sexually harassing remarks and behavior that he directed towards her."). Accordingly, Count 4 is dismissed.

**2.     Retaliation in Violation of Title VII for Denial of Training and Advancement Opportunities (Count 5)**

In arguing for dismissal of Count 5, Defendants do not argue that it is insufficiently pled. Rather they argue that this claim has not been properly exhausted and therefore cannot proceed at this time. (Dkt. 39) at 6–8. Before litigating an unlawful employment practice under Title VII, an employee must file a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). This requirement "gives the employer some warning of the conduct about which the employee is aggrieved and affords the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted). McGowan has filed the necessary charge, but Defendants argue that her claim that Jackson denied her training and advancement opportunities was not included.

"A plaintiff's failure to exhaust administrative remedies is an affirmative defense." *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007); *see also Stuart v. Local 727, Int'l Brotherhood of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) ("A plaintiff is not required to negate an affirmative defense in his or her complaint[.]"). "Affirmative defenses cannot form the basis to dismiss unless the plaintiff's complaint pleads the plaintiff out of court." *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 808 (N.D. Ill. 2007) (citing *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993)).

Here, McGowan's Charge alleges that "[d]uring [her] employment, [she] was suspended and [she] complained of harassment; subsequently [she] was subjected to continued harassment and was discharged." (Dkt. 35) at 18. "The proper scope of a judicial proceeding following an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'" *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) (citing *Rush v. McDonald's*

*Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)); *see also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). However, there is an exception to this rule for claims that are "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999); *accord Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011) ("[I]f certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'") (citation omitted). To be "reasonably related," the EEOC charge and the relevant claim must involve the same conduct and implicate the same individuals. *Huri*, 804 F.3d at 832 (citing *Moore*, 641 F.3d at 257); *accord Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

There is no question here that McGowan's Charge and Count 5 implicate the same individual—Jackson. What is more, the Court finds that the Charge and Count 5 pertain to the same conduct—Jackson's discriminatory and retaliatory behavior—such that an investigation into the Charge allegations could be expected to involve McGowan's allegations that Jackson's refused to allow her to train for a position in the Motel Sleepers restaurant and denied her other training and advancement opportunities. Of course, McGowan eventually will need to support Count 5's claim for retaliation in the form of denial of advancement opportunities and training with specific evidence. *See Nagle v. Vill. of Calumet P*ark, 554 F.3d 1106, 1116–17 (7th Cir. 2009) ("[A]lthough the definition of an adverse employment action is generous, an employee must show some quantitative or qualitative change in the terms or conditions of [her] employment or some sort of real harm.") (quotation marks omitted); *see, e.g., Dalton v. Bd. of Educ. for, Mount Vernon Twp. High Sch. Dist. 201*, 162 F. Supp. 3d 807, 812 (S.D. Ill. 2016)

(the denial of training must tend to affect one's employment status or benefits or cause material harm to an employee's opportunities for growth or advancement to be actionable). But at this time, in the absence of any additional arguments for dismissal of Count 5, the Court finds that it is reasonably related to McGowan's Charge and it will proceed.

**C.    Illinois Discharge Claims**

In Counts 7, 8, and 9, McGowan alleges that she was unlawfully fired for filing two police reports against Tate. (Dkt. 35) at ¶¶ 93, 100, 108. She claims that this violated both the Illinois Whistleblower Act and the common law protection against retaliatory discharge.

**1.    Retaliatory Discharge (Count 8)**

Turning first to Count 8, in Illinois the default rule is that an employee serves at the will of his employer, who may discharge him "for any reason, or no reason" at all. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991). The common-law tort of retaliatory discharge is a "limited and narrow" exception to employment at will. *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500 (2009). To establish a claim for retaliatory discharge, Plaintiff must allege that: (1) she was discharged; (2) her discharge was in retaliation for legally-protected activities; and (3) her discharge contravened a clearly-mandated public policy of the State of Illinois. *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (citing *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 159 (1992)).

Through the Second Amended Complaint, McGowan alleges that she was fired "because she reported what she reasonably believed were crimes to the police." (Dkt. 35) at ¶ 100. This language alleges the termination necessary to satisfy the first two prongs of the retaliatory-discharge test. But despite McGowan's allegations that "[i]t is against the public policy of Illinois for an employer to fire an employee because she reported what she reasonably believes to

be a crime to the police" and that the "public policy of Illinois [is] to encourage citizens to report crimes to the police," *id.* at ¶¶ 98, 101, Defendants argue that Count 8 fails to adequately plead the third element of the claim because McGowan's police reports were private and individual grievances that did not implicate Illinois public policy. (Dkt. 39) at 8.

"[P]ublic policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981); *see also Sutherland v. Norfolk S. Ry. Co.*, 356 Ill. App. 3d 620, 627 (1st Dist. 2005) (a "whistleblower must allege that his or her discharge violated a clear mandate of public policy because the reported wrongful conduct or unsafe condition affected the health, safety or welfare of Illinois residents as a whole") (citing *Palmateer*, 85 Ill. 2d at 130). "[A] review of Illinois case law reveals that retaliatory discharge actions have been allowed in two settings: where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* []); or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael v. Precision Alliance Grp., LLC*, 2014 IL 117376, ¶ 30 (citation omitted); *see also Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376 (1998) (retaliatory discharge actions are viable "when an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistle blowing'"). "The rationale is that, in these situations, an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner." *Michael*, 2014 IL 117376, ¶ 30.

Defendants argue, citing to *Irizarry v. Ill. Cent. R. Co.*, 377 Ill. App. 3d 486 (1st Dist. 2007), that outside of the two specifically enumerated circumstances (workers compensation and

whistleblowing), "Illinois courts have consistently refused to expand the tort to encompass a private and individual grievance." (Dkt, 39) at 9; (Dkt. 44) at 6. McGowan does not dispute this proposition. Instead, she argues that her retaliatory-discharge claim fits neatly into one of the enumerated exceptions: whistleblowing. Specifically, McGowan claims that her police reporting activity was that of a "citizen crime fighter," which is an accepted theory in support of a retaliatory discharge claim. (Dkt. 42) at 10–11. McGowan is correct. It is well-established that a plaintiff who was fired for reporting criminal conduct may prevail on a retaliatory discharge claim as a "whistleblower." *Corral v. UNO Charter Sch. Network, Inc.,* 2013 WL 1855824, at *11 (N.D. Ill. May 1, 2013) (citing cases). That is, "[t]here is no public policy more basic, nothing more implicit in the concept of ordered liberty, than the enforcement of a State's criminal code." *Palmateer*, 85 Ill. 2d at 132 (internal citation omitted); *Belline v. K-Mart Corp.,* 940 F.2d 184, 187 (7th Cir. 1991) ("public policy clearly favors the exposure of crime").

In fact, *Palmateer* involved a managerial employee who was fired for "supplying information to local law-enforcement authorities" that another employee might be involved in a violation of the Criminal Code "and for agreeing to assist in the investigation and trial of the employee if requested." *Id.* at 128. The Illinois Supreme Court found it "clear" that the plaintiff, who it dubbed a citizen crime-fighter, had alleged he was fired in violation of an established public policy. Based on McGowan's allegations, the Court reaches the same conclusion here. That is, she has adequately pled that her employment was terminated in violation of Illinois public policy. *See, e.g., Daoust v. Abbott Labs.,* 2007 WL 118414, at *5 (N.D. Ill. Jan.11, 2007) (discharge in retaliation for reporting an incident of workplace violence would be a violation of clearly mandated public policy under Illinois law); *Marks v. Custom Aluminum Prod., Inc.,* 2007 WL 1976357, at *9 (N.D. Ill. July 5, 2007) (holding that the plaintiff's filing of a battery claim

against his employer to be consistent with the public policy and thus discharge in retaliation for filing a police report in this instance would be a discharge in violation of public policy); *Vance v. Dispatch Mgmt. Serv.*, 122 F. Supp. 2d 910, 912 (N.D. Ill. 2000) (employee who reported the criminal activity (battery) of coworker when she applied to court for protective order stated a claim for retaliatory discharge); *see also, e.g., Ziccarelli v. Phillips*, 2013 WL 5387864, at *6 (N.D. Ill. Sept. 25, 2013) (terminated employee who had lodged complaints about workplace safety and an incident with a coworker stated a claim for retaliatory discharge).

Significantly, neither *Irizarry*, which involved a claim that the plaintiff was fired in retaliation for filing a Federal Employers' Liability Act ("FELA") claim, nor any of the cases cited in its discussion of what constitute private and individual grievances are analogous here because none involved the filing of a report to law for enforcement of a crime. *Irizarry*, 377 Ill. App. 3d at 490 (citing cases that failed to state a claim for retaliatory discharge because protected activity was private in nature where employees (a) sued employer for libel and defamation, (b) sued general partner for breach of fiduciary duty, (c) filed a complaint against employer for violation of city ordinance, (d) married a coworker, and (e) reported manager's theft of scrap wood for personal use); *see also Howell v. BNSF Ry. Co.*, 2015 WL 3528237, at *3 (N.D. Ill. June 4, 2015) (reporting a personal workplace injury did not serve to support retaliatory discharge claim because, it has already been firmly established that workers alleging that they were terminated for asserting rights under FELA may not pursue a common law retaliatory discharge claim but also because an employee's report of his own injury does not qualify as whistleblowing). The motion to dismiss Count 8 is denied.

## 2.    Illinois Whistleblower Act (Counts 7 and 9)

In Counts 7 and 9, McGowan alleges by firing her after she had made the police reports concerning Tate, both Motel Sleepers and Jackson individually also violated the Illinois Whistleblower Act ("IWA"). The purpose of the IWA is "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 99.

As relevant to McGowan's claims, under the IWA, an employer may not retaliate against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Construing the allegations of the Second Amended Complaint as true, McGowan filed reports with the Chicago Police Department against Tate for (1) assault and (2) battery and she reasonably believed that Tate's actions were crimes. (Dkt. 35) at ¶¶ 93, 95, 108, 110. McGowan further alleges that Motel Sleepers, through Jackson, fired her because she filed the police reports. *Id.* at ¶¶ 95, 108. At the 12(b)(6) stage, no more is required of McGowan to state an IWA cause of action against either Motel Sleepers or Jackson. *See Bernero v. River Grove*, 2018 WL 3093337, at *6 (N.D. Ill. Jun. 22, 2018) ("employer" may be and "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees") (quoting 740 ILCS 174/5).

Yet, Defendants argue that McGowan's claim fails because her police reports were not premised on wrongful conduct or unsafe conditions that affected the health, safety, or welfare of Illinois residents as a whole. (Dkt. 39) at 10; *see also Larsen v. Provena Hosp.*, 2015 IL App (4th) 140255, ¶ 47 (the purpose of the IWA is to protect statutorily defined employees who report violations of state or federal laws, rules, or regulations because the reported wrongful

conduct or unsafe condition affects the health, safety, or welfare of Illinois residents as a whole). Even if this were a pleading requirement for an IWA claim, which the statute does not indicate, as the Court has already discussed in Section C.1 *supra*, McGowan has included sufficient allegations in her Second Amended Complaint to allege (or at minimum create the inference) that her report of criminal activity was in support of the public policy of the State of Illinois. As a final point here, Defendants mention that at the time of McGowan's termination, they had not seen the actual police reports. (Dkt. 39) at 10. But this is not grounds for dismissal at this phase because McGowan has generally alleged that Defendants were aware of her police reporting activity and specifically alleged that Jackson met with the police officers who responded to her call on March 29. *E.g.*, (Dkt. 35) at ¶¶ 41, 44, 46. Defendants' motion to dismiss Counts 7 and 9 is denied.

**D.      Intentional Infliction of Emotional Distress (Count 10)**

Finally, Defendants argue that McGowan's claim for intentional infliction of emotional distress (IIED) should be dismissed because it is preempted by the Illinois Human Right Act ("IHRA"). (Dkt. 39) at 11–13. Preemption is an affirmative defense. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018). Again, a plaintiff need not plead around an affirmative defense, so a court may dismiss a claim based on an affirmative defense only when the plaintiff "plead[s] h[er]self out of court by alleging (and thus admitting) the ingredients of a defense." *Chicago Bldg. Design, PC v. Mongolian House Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *United States Gypsum v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

The IHRA makes it a "civil rights violation . . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or

conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A). Among other things, sexual harassment is a civil rights violation under the IHRA. 775 ILCS § 5/2–102(D). In addition, the IHRA provides that: "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS § 5/8–111(C). Under this provision, the IHRA "preempts all state law claims seeking redress for a civil rights violation within the meaning of that statute." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (alteration and internal quotation marks omitted); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (the IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations).

McGowan's IIED claim is preempted by the IHRA if it is "inextricably linked" with her sexual harassment claim. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (Ill. 1997) ("[W]hether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself."). But a tort claim "is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic*, 177 Ill. 2d at 519. Mere factual overlap between the state-law tort and the IHRA claim does not establish preemption. *See Torres v. Merck Sharp & Dohme Corp.*, 255 F. Supp. 3d 826, 832 (N.D. Ill. 2017). Nor are IIED claims categorically preempted by the IHRA's prohibition against sexual discrimination. *Naeem*, 444 F.3d at 593; *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1009 (Ill. App. Ct. 1999). Offensive conduct may give rise both to a claim for IIED and to a claim under the IHRA,

so long as the former does not rest on the legal responsibilities created by the latter. *Figueroa v. City of Chicago*, 1999 WL 163022, at *10 (N.D. Ill. 1999).

The essential question thus is whether Motel Sleepers's conduct, devoid of any sexually discriminatory motive, could support a claim for IIED. *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, *519–20 (7th Cir. 2003). Here, McGowan complains (in vague terms) about the harassing, discriminating, and retaliating actions of Jackson, including his action of firing her, as being extreme and outrageous. (Dkt. 35) at ¶ 117. Likewise extreme and outrageous were Motel Sleepers's actions of actively ignoring her complaints, telling Jackson about her complaints, and allowing him to continue "harassing, discriminating against, and retaliating against" her and "to fire her after she undertook protected activity." *Id.* at ¶¶ 113–14. In other words, the emotional distress caused by Jackson's actions and Motel Sleepers's refusal to take remedial action is relevant only by virtue of the sexual discrimination that gave rise to it. *Figueroa*, 1999 WL 163022, at *11 ("The essence of [plaintiff's] IIED claim against the [defendants] is that [plaintiff] suffered emotional distress because these individuals failed to remedy the alleged sexual harassment. These allegations are only relevant to [plaintiff's] claims of IIED by virtue of the legal duties created by the IHRA."); *cf. Naeem*, 444 F.3d at 603 n.4 (explaining that an emotional distress claim that "involve[s] sexual elements" may survive preemption under the IHRA, provided that it does "not depend on the prohibitions against sex discrimination for its survival") (internal quotation marks omitted).

The sex-based discrimination and retaliation alleged in the Second Amended Complaint are not "merely incidental" to McGowan's IIED claim, *Maksimovic*, 687 N.E.2d at 23; rather, they are "the core of [her] theory," *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1151 (7th Cir. 1999) ("[W]e think it clear that Smith's state-law theories sound primarily in racial

discrimination and thus are not independent of civil rights law."). Meaning Count 10 is inextricably linked to McGowan's sexual-harassment, discrimination, and retaliation allegations, and thus the IHRA preempts this claim. *See Martin v. Cook County, Ill.*, 2018 WL 1942654, at *7 (N.D. Ill. Apr. 25, 2018) (IHRA preempted the plaintiff's IIED claim where the claim was based entirely on the allegations and conduct supporting the plaintiff's religious discrimination claim and the IIED allegations were offensive only insofar as they concerned the defendant's religious discrimination); *see also Krocka*, 203 F.3d at 516–17 (IHRC is the proper forum where distressing incidents reflect prohibited discrimination in the workplace). Defendant's motion is granted as to Count 10.

## CONCLUSION

For the reasons explained above, Defendants' partial motion to dismiss (Dkt. 38) is granted in part and denied in part. Defendants' motion is granted with respect to Counts 4 and 10; Defendants' motion is denied with respect to Counts 2, 5, 7, 8, and 9.



Hon. Virginia M. Kendall
United States District Judge

Date: August 21, 2018